UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRIAN GUILFORD, as Personal Representative
of the Estate of Deven Guilford,

        Plaintiff,

V

EATON COUNTY and SGT. JONATHON FROST,
in his individual capacity, jointly and severally,

        Defendants.

Case No. 15-cv-01053

Hon. Paul L. Maloney

_____/

Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
Attorneys for Plaintiff
Constitutional Litigation Associates, P.C.
450 W. Fort St., Ste. 200
Detroit, MI 48226
(313) 961-2255/Fax: (313) 922-5130
Davis@ConLitPC.Com
Heenan@ConLitPC.Com
Info@ConLitPC.com

James L. Dyer (P32544)
Shaina R. Reed (P74740)
Attorney for Defendants
Johnson, Rosati, Schultz & Joppich, P.C.
822 Centennial Way, Ste. 270
Lansing, Michigan 48917
(517) 886-3800
jdyer@jrsjlaw.com

_____/

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND JURY DEMAND AND DEFENDANTS' AFFIRMATIVE DEFENSES**

    NOW COME the Defendants and in response to Plaintiff's Complaint and Jury Demand state as follows:

**PARTIES, JURISDICTION AND VENUE**

    1.    This is a wrongful death and violation of civil rights action brought by Plaintiff in his representative capacity against Defendants.

    **ANSWER: Defendants deny all allegations of wrongful conduct, and violation of the Federal Civil Rights of Deven Guilford, for the reason the same is untrue. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegation in this paragraph.**

2. BRIAN GUILFORD (PLAINTIFF), the father of Deven Guilford (GUILFORD), is a resident of Mulliken, County of Eaton, State of Michigan.

**ANSWER:** Admitted.

3. PLAINTIFF is the duly appointed Personal Representative of the Estate of Deven Guilford, who at the time of his death was a minor, pursuant to an Order of the Eaton County Probate Court and the Letters of Authority which have been lawfully issued.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the matter asserted.**

4. Thus, PLAINTIFF is empowered to bring this lawsuit against the aforelisted Defendants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the matter asserted.**

5. This action arises under 42 USC §1983. Jurisdiction is conferred by 28 USC §1331 (federal question) and §1343(4) (civil rights). Pendant state claims are governed by supplemental jurisdiction under 28 USC §1367.

**ANSWER: Defendants do not contest that this court has subject matter jurisdiction over the claims asserted by Plaintiff. In further response, Defendants deny that Plaintiff has a legitimate claim under 42 USC § 1983, for damages or 42 USC § 1988, for attorney fees, or that they violated the federal civil rights of the Plaintiff, for the reason the same is untrue.**

6. At all times relevant hereto, PLAINTIFF's decedent GUILFORD was a resident of Mulliken, County of Eaton, State of Michigan.

**ANSWER:** Admitted.

7. At all times pertinent hereto, Defendant EATON COUNTY was a governmental subdivision organized under the laws of the State of Michigan and is located in the Western District of Michigan.

**ANSWER: Defendants admit that Eaton County is a political subdivision of the State of Michigan, located in the Western District of Michigan and a municipal corporation under Michigan law and that it is engaged in the exercise and discharge of governmental functions, as prescribed by the law of the State of Michigan.**

8. At all times pertinent hereto, Defendant JONATHON FROST (FROST) was a sergeant of the Eaton County Sheriff's Department and, on information and belief, a resident of Eaton County, Michigan. He is sued in his individual capacity. He was acting under color of law pursuant to the policies, practices and customs of the Defendant EATON COUNTY Sheriff's Department.

**ANSWER: Admitted.**

### COMMON ALLEGATIONS OF FACT

9. At approximately 8:30 p.m. on the night of Saturday, February 28, 2015, PLAINTIFF's decedent, GUILFORD, was driving his girlfriend's 2010 Ford Focus on M-43 west of Cochran Road in or near Mulliken, Michigan. He had been playing basketball at his church with his brother and was on his way to visit his girlfriend.

**ANSWER: Defendants admit that on February 28, 2015, at approximately 8:30 p.m., Deven Guilford was driving a Ford Focus on M-43 west of Cochran Road. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

10. Defendant FROST was on duty in a new, marked EATON COUNTY Sheriff Department 2015 Ford Explorer SUV vehicle and was travelling in the opposite direction. It was his first shift driving the new vehicle.

**ANSWER:   Admitted, except that Sgt. Frost was driving a 2015 Ford Interceptor.**

11. FROST'S vehicle had improperly bright or misaimed, headlights, even on low-beams, inasmuch as the record reflects that at least three vehicles, including GUILFORD, flashed their headlights at FROST, apparently attempting to get him to dim his headlights that projected glaring oncoming rays into the eyes of oncoming drivers.

**ANSWER:   Denied, in the manner and form alleged, for the reason the same is untrue. In further response, only one driver other than Deven Guilford flashed their high beam lights at Sgt. Frost's vehicle prior to the traffic stop of the vehicle driven by Deven Guilford.**

12. FROST effected traffic stops on all three of the vehicles who flashed their lights at him, although he issued no citations.

**ANSWER:   Denied as untrue. The only traffic stop for flashing bright lights was effected upon the vehicle driven by Deven Guilford.**

13. The relevant provision of the Michigan Motor Vehicle Code (MCL 257.700) provides:

> MCL 257.700(b), provides that the driver of a vehicle approaching an oncoming vehicle within 500 feet:
>
> "shall use a distribution of light or composite beam so aimed that the glaring rays are not projected into the eyes of the oncoming driver."

**ANSWER:   No answer is required, as this paragraph merely states the legal conclusion of the pleader, and is not a matter of fact the Defendants may be called**

upon to answer. In further response, this paragraph does not state the full text of the applicable provision of the Michigan Motor Vehicle Code, which states that "The lowermost distribution of light, specified in section 699 paragraph (c), shall be deemed to avoid glare at all times regardless of road contour and loading."

14. Thus, on its face, the Michigan statute does not prohibit momentary the flashing of headlights, but only the glaring of beams sufficient to impair the vision of an approaching vehicle within 500 feet.

**ANSWER:   Denied as untrue. In further response, a claim by a driver that either his high beam lights were not glaring, or were not displayed within 500 feet of an incoming vehicle, would be questions of fact to be resolved at a hearing concerning a civil infraction citation issued to that driver, and would not invalidate a decision by a law enforcement officer to stop a vehicle for that violation.**

15. Thus, the traffic stops effected by FROST on the three vehicles who flashed their headlights that night, including GUILFORD, were illegal.

**ANSWER:   Denied as untrue, since Deven Guilford was the only vehicle stopped for this reason and he did flash his high beam lights at the vehicle driven by Sgt. Frost, and did not use the lower most distribution of light as required when approaching another vehicle.**

16. After FROST stopped GUILFORD, a dispute arose over whether FROST had been driving with his bright (high beam) lights on, which FROST denied.

**ANSWER:   Admitted.**

17. FROST quickly became angry and agitated, ordering GUILFORD to produce his driver's license, registration and proof of insurance. That was a further illegal demand inasmuch as FROST had no legal cause to stop GUILFORD in the first place.

5

**ANSWER:** Denied as untrue. In further response, having stopped him for a traffic violation, Deven Guilford was obligated under Michigan law, to produce his drivers license, and a motor vehicle registration and proof of insurance for the vehicle he was driving. Sgt. Frost requested that Deven Guilford provide these documents, but he did not when requested by Sgt. Frost on eight occasions during the traffic stop. At various times, Deven Guilford stated that he did not have his license in his possession, that he did have his license but Sgt. Frost did not need to see it. In response, Deven Guilford also demanded that Sgt. Frost provide three forms of identification, but never provided his name, address or any other information that might have assisted Sgt. Frost to identify him.

18. GUILFORD refused.

**ANSWER:** Admitted.

19. Although GUILFORD was perturbed by FROST's actions, he was at all times courteous and respectful.

**ANSWER:** Defendants lack knowledge or information to form a belief as to Deven Guilford's state of mind. He did, however, appear uncooperative, upset and agitated to Sgt. Frost. The remaining allegations in this paragraph are denied, for the reason the same is untrue.

20. FROST refused GUILFORD'S legitimate request for FROST'S police badge number.

**ANSWER:** Denied, in the manner and form alleged, since Deven Guilford requested to "see" Sgt. Frost's badge number, though his badge does not have a number on it. In response to Deven Guilford questioning whether Sgt. Frost was a police officer, Frost replied by clearly identifying himself as Sgt. Jon Frost of the

6

**Eaton County Sheriff Office. In addition, Frost was in full uniform and driving a marked police vehicle. Sgt. Frost tried on at least one occasion to tell Deven Guilford his badge number, but was interrupted by Deven Guilford stating that Frost had refused to let him "see" his badge number.**

21.  When FROST radioed a second time for priority backup, GUILFORD attempted to call his girlfriend. He had left his wallet with his license at her house and she would have had the registration and proof of insurance for her car.

**ANSWER:   Admitted that Deven Guilford dialed a phone number on his cell phone, but denied that he told Sgt. Frost either whom he was dialing or for what reason. The remaining allegations are denied, in the manner and form alleged, since Sgt. Frost only requested priority back up once.**

22.  Without waiting for backup and without giving GUILFORD any prior command to exit the car FROST opened the driver's side door and grabbed GUILFORD and started pulling him out.  FROST then drew his taser, pointed at GUILFORD and told him to exit the vehicle. GUILFORD complied.

**ANSWER:   Denied, in the manner and form alleged, for the reason the same is untrue.**

23.  This was a further unconstitutional act inasmuch as, even if MCL 257.700 were to prohibit the momentary flashing of headlights, it is a two-point civil infraction and would not support an arrest.

**ANSWER:   No answer is required, as this paragraph merely states the legal conclusion of the pleader, and is not a matter of fact the Defendants may be called upon to answer. In further response, Sgt. Frost actions were not unconstitutional since he had first informed Deven Guilford that failure to provide his driver's license**

was a misdemeanor offense. Further, when asked by Deven Guilford if he was being detained, Sgt. Frost informed him that he was.

24. FROST continued to escalate the situation and unreasonably treated GUILFORD as if he were a dangerous felon, ordering him to get down on his knees and then to lie face first in the ice and snow beside the road.

**ANSWER:** Denied, for the reason the same is untrue.

25. GUILFORD complied.

**ANSWER:** Denied as untrue, in that Deven Guilford was ordered to place his hands behind his back for handcuffing. He refused to comply and physically resisted Sgt. Frost's efforts to take him into custody after having been told that he was under arrest.

26. According to FROST, GUILFORD looked back at him, which FROST claimed he had been trained to interpret as an indication that the arrestee was going to get up and attack the officer.

**ANSWER:** Admitted that Deven Guilford showed pre-attack "targeting" behavior consistent with Sgt. Frost's training.

27. Therefore, FROST, without using verbal commands, hand control or any other instrumentality, elevated through the force continuum and shot GUILFORD in the back with his taser.

**ANSWER:** Admitted that after verbal commands and empty hand techniques were unsuccessful, Sgt. Frost used his Taser, aiming at Deven Guilford's back, but the Taser was ineffective. The remaining allegations in this paragraph are denied, in the manner and form alleged, as both verbal commands and empty hand

techniques were ineffective to obtain compliance after Deven Guilford was informed by Sgt. Frost that he was under arrest.

28. That unnecessary, excessive and illegal act caused GUILFORD to get to his feet.

ANSWER: Admitted that Deven Guilford was able to get to his feet after Sgt. Frost used the Taser. He then punched Sgt. Frost violently in his left temple. The remaining allegations in this paragraph are denied as untrue.

29. Seconds later, FROST pulled his service weapon and shot GUILFORD multiple times, killing him.

ANSWER: Defendants admit that while defending himself from a violent assault by Deven Guilford and, on ground covered in deep snow, while Deven Guilford sat on top of him, pinned him to the ground and was repeatedly striking him in the head, face and elsewhere with his fists causing injury and near loss of consciousness, Sgt. Frost shot and killed Deven Guilford.

30. The entire encounter lasted just over 5 minutes and the backup vehicles arrived only a minute after the shots were fired.

ANSWER: Admitted, except that backup arrived more than one minute after shots were fired with considerably more time having elapsed after the initial request for back up, and the later request for priority back up. However, Sgt. Frost had no idea when any back up might arrive, even after a priority request.

31. The acts of FROST in stopping, demanding identification, ordering GUILFORD from the car, arresting him as if he were a felon, tasing him and then killing him, were all separate and distinct illegal and unreasonable seizures under the 4th Amendment.

ANSWER: Denied, in the manner and form alleged, for the reason the same is untrue.

9

32. Thus, GUILFORD and his estate are entitled to all damages allowable under the Michigan Wrongful Death Act, as well as the full amount of damages allowable pursuant to 42 U.S.C. §1983, including, but not limited to:

    A. Conscious pain and suffering prior to death.

    B. Medical and burial expenses.

    C. Loss of a financial support of family members.

    D. Loss of society and companionship.

    E. Loss of a lifetime of earning capacity.

**ANSWER:   Defendants deny all allegations of wrongful, or illegal conduct, or conduct in violation of the Federal Civil Rights of Deven Guilford, for the reason the same is untrue. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph concerning damages.**

33. Because FROST acted in an intentional, reckless, malicious manner toward GUILFORD with deliberate indifference to and callous disregard for his health, safety and welfare, PLAINTIFF is entitled to punitive damages.

**ANSWER:   Denied, for the reason the same is untrue.**

34. FROST's actions in this regard were carried out as a part of the custom, policies and practices of the EATON COUNTY Sheriff's Department, which included a failure to train, supervise, discipline or properly instruct its officers in the laws of the State of Michigan regarding flashing headlights, civil infraction traffic stops, arrests, use of force, use of weapons and use of tasers, *inter alia*.

**ANSWER:   Denied, for the reason the same is untrue.**

35. Thus, municipal liability is imposed on EATON COUNTY by virtue of the unconstitutional policies and practices of the Sheriff's Department.

**ANSWER:** **Denied, for the reason the same is untrue.**

36. Defendant COUNTY is thus jointly and severally liable with Defendant FROST, although not subject to punitive damages.

**ANSWER:** **Denied, for the reason the same is untrue.**

37. The acts complained of were clearly established as illegal and unconstitutional before the date of this incident on February 28, 2015 and Defendant FROST is therefore not entitled to qualified immunity.

**ANSWER:** **Denied, for the reason the same is untrue.**

38. Defendant COUNTY has no claim of immunity under the law.

**ANSWER:** **Denied, for the reason the same is untrue.**

### Count I - Violation of Civil Rights (Excessive Force, Illegal Seizure, Wrongful Death) 4th Amendment USC §1983

39. Plaintiff incorporates by reference paragraphs 1 through 38 above as though fully stated herein, paragraph by paragraph, and word for word.

**ANSWER:** **Defendants restate their response to the allegations in paragraphs 1-38, as if repeated here.**

40. The individual Defendant FROST used excessive force in unreasonably stopping, seizing, arresting and using unnecessary and deadly weapons on GUILFORD, violating his rights under the Fourth Amendment and 42 USC 1983, resulting in his death.

**ANSWER:** **Denied, for the reason the same is untrue.**

**WHEREFORE**, Defendants ask this Court to dismiss the claim brought against them, in its entirety and with prejudice, and to award such costs, including a reasonable attorney fee, as may be permitted by law.

### Count II - Municipal Liability (Excessive Force) 4th Amendment USC §1983

40.     [sic, 41] PLAINTIFF incorporates by reference paragraphs 1 through 39 above as though fully stated herein, paragraph by paragraph, and word for word.

**ANSWER:   Defendants restate their response to the allegations in paragraphs 1-40, as if repeated here.**

41.     [sic, 42] The customs, policies and practices of EATON COUNTY regarding the hiring, training, supervising, equipping and disciplining the individual Defendant officer, directly and proximately caused and resulted in GUILFORD's death.

**ANSWER:   Denied, for the reason the same is untrue.**

**WHEREFORE**, Defendants ask this Court to dismiss the claim brought against them, in its entirety and with prejudice, and to award such costs, including a reasonable attorney fee, as may be permitted by law.

### RELIANCE ON JURY DEMAND

Defendants intend to rely upon Plaintiff's Jury Demand filed herein.

### AFFIRMATIVE AND OTHER DEFENSES

Defendants may rely upon the following Affirmative and other defenses at or before the time of trial:

1.      Plaintiff has failed to state a claim upon which relief can be granted against these Defendants.

2. Except as to the amount of damages there is no genuine issue of material fact and the Defendants are entitled to judgment, or partial judgment, as a matter of law.

3. There is no genuine issue of material facts, and Plaintiff is not entitled to relief, as a matter of law because, based upon the totality of Deven Guilford's conduct and the facts known to Sgt. Jon Frost at the time force was used. Sgt. Frost had a reasonable belief that Deven Guilford intended to inflict death or serious and imminent personal injury to him, creating a justifiable need for the use of force to prevent its occurrence. As a result, the actions taken by Sgt. Frost were objectively reasonable, an appropriate exercise of police authority under Federal and State law, and did not amount to violation of Michigan Law or Plaintiff's Federal statutory or constitutional rights.

4. At the time force was used by Sgt. Frost, Deven Guilford was lawfully subject to arrest for a misdemeanor offense, and his continued resistance to that lawful arrest, and the subsequent assault upon the physical person of a law enforcement officer in the course of his duty constituted serious felonies subject to a sentence of imprisonment in excess of one year.

5. There is no genuine issue of material facts, and Plaintiff is not entitled to relief, as a matter of law because, based upon the totality of Deven Guilford's conduct and the facts known to Sgt. Jon Frost at the time force was used, Deven Guilford posed a significant threat of serious injury or death to Frost.

6. There is no genuine issue of material facts, and Plaintiff is not entitled to relief, as a matter of law because Sgt. Jon Frost acted reasonably when faced with the uncertainty of a rapidly evolving life and death situation, confronting an individual physically and actively assaulting him, to the point of serious injury and near unconsciousness, at the time force was used.

7.   Plaintiff's claim is barred, in whole or in part, by his own acts, assaults or misconduct.

8.   Defendant Frost is entitled to qualified immunity from individual liability alleged pursuant to 42 USC §1983 since Plaintiff does not allege conduct by him individually which would violate a clearly established federal statutory or constitutional right, of the Plaintiff, which a reasonable person would have known.

9.   Plaintiff has failed to state a claim upon which relief can be granted since the actions of Sgt. Frost did not amount to a violation of Plaintiff's statutory or constitutional rights, under United States or Michigan Law.

10.   Defendants reserve the right to add additional affirmative defenses as discovery and the course of this litigation shall disclose, according to the Federal Rules of Civil Procedure and the Orders of this Court.

          Respectfully Submitted,

          JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C.

          /s/   James L. Dyer
          BY: James L. Dyer (P32544)
                Shaina R. Reed (P74740)
          Attorney for Defendants
          822 Centennial Way, Suite 270
          Lansing, Michigan  48917
          (517) 886-3800
          Fax:  (517) 886-9154
Dated:  November 25, 2015      jdyer@jrsjlaw.com
          reed@jrsjlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record listed in the caption.

          Respectfully Submitted,

          JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C.


          /s/   James L. Dyer
          BY:  James L. Dyer (P32544)
                Shaina R. Reed (P74740)
          Attorney for Defendants
          822 Centennial Way, Suite 270
          Lansing, Michigan  48917
          (517) 886-3800
          Fax:  (517) 886-9154
          jdyer@jrsjlaw.com
          reed@jrsjlaw.com

Dated: November 25, 2015